1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

9
10

AIR TRANSPORT ASSOCIATION OF
AMERICA, d/b/a AIRLINES FOR AMERICA,

Plaintiff,

11
12

v.

13
14

THE WASHINGTON DEPARTMENTOF
LABOR & INDUSTRIES and JOEL SACKS, in
his official capacity as Director of the
Department of Labor & Industries,

15

Defendants.

No. _____

COMPLAINT FOR
DECLARATORY AND
INJUNCTIVE RELIEF

16
17

## I.     INTRODUCTION

18       1.      The Washington Paid Sick Leave Act, passed by Initiative 1433, and its

19  implementing regulations (collectively referred to herein as the "Paid Sick Leave Act" or

20  "Act"), as applied to pilots and flight attendants ("flight crew"), violate the United States

21  Constitution.

22       2.      The United States Constitution's Dormant Commerce Clause limits the power of

23  states to enact legislation that affects interstate commerce when a national uniform economic

24  policy is required.  Uniformity in regulation of air carriers from one end of a route to another is

25  a national necessity, and only regulation by a single regulatory authority can ensure efficient air

26  carrier operations.  Accordingly, Congress regulates nearly every facet of the air transportation

27  industry, and this federal regulation is "intensive and exclusive." *Northwest Airlines v.*

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

1    *Minnesota*, 322 U.S. 292, 303 (1944) (Jackson, J., concurring); *see also* 49 U.S.C. §

2    40103(a)(1) (stating that the federal government has exclusive sovereignty of the airspace of

3    the United States).  For example, the Airline Deregulation Act ("ADA"), 45 U.S.C. § 41713(b)

4    preempts state or local laws that relate to the prices, routes, and services of air carriers.

5          3.      Allowing Washington to require and regulate the provision and use of paid sick

6    leave for flight crew thwarts this uniform system of federal regulation.  If Washington can

7    regulate flight crew leave, other states and municipalities can too.  Indeed, at least 36 state and

8    local jurisdictions currently require and regulate paid sick leave.  These various regimes impose

9    different (and inconsistent) obligations on air carriers.  For example, a flight crew departing

10   from SeaTac International Airport, landing in Portland International Airport, and continuing to

11   San Diego International Airport is subject to three different paid sick leave laws in a single duty

12   period, each with its own accrual, compensation, reporting, and leave requirements.[1]

13   Additionally, if states were permitted to enforce disparate laws against air carriers, flight crew

14   who worked the entire trip (Seattle to San Diego) would receive paid leave benefits different

15   from those received by flight crew who flew the second leg (Portland to San Diego) but not the

16   first (Seattle to Portland), even though the two flight crews worked on the same plane.  Not

17   only does this cause mass confusion among flight crews, the task of untangling the snarl of

18   conflicting paid sick leave rules imposes a substantial and unconstitutional burden on air

19   carriers in violation of the Dormant Commerce Clause.

20         4.      Member airlines in Plaintiff Air Transport Association of America, d/b/a

21   Airlines for America ("A4A"), already provide paid sick leave benefits to pilots and flight

22   attendants, and they have for years.  Airlines extensively negotiate these benefits in nationwide

23   collective bargaining agreements ("CBAs"), and these comprehensive bargained-for benefits

24   allow flight crew to take paid time away from work to care for themselves and family

25

26   ---

[1] Washington's Department of Labor & Industries (L&I) takes the position that the Paid Sick Leave Act applies

27   extraterritorially to Washington domiciled employees, regardless of whether that work occurs in Washington or in
     some other jurisdiction, regardless of whether the other jurisdiction has its own paid sick leave law, and regardless
     of how much time the employee actually spends working in Washington.

COMPLAINT FOR DECLARATORY RELIEF - 2
4842-6380-3995v.10 0017572-000396

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

members.  In exchange, airlines preserve the right to monitor attendance and reliability to ensure compliance with federal regulations governing duty period limitations, flight crew family medical leave, rest requirements, and aviation safety.  The Paid Sick Leave Act conflicts with these carefully negotiated provisions.  Because the burdens on air carriers and interstate commerce imposed by the Paid Sick Leave Act substantially outweigh the putative state interest in regulating paid sick leave for flight crew at the state level, the Act is unconstitutional as applied to flight crew.

5.      In addition, the Airline Deregulation Act preempts the Paid Sick Leave Act because the Act relates to and adversely affects air carrier prices, routes, and services.  Among other effects, paid sick leave laws, like Washington's, severely constrain an airline's ability to monitor and prevent abuse of sick leave and result in significant spikes in flight crew absences, which leads to an increase in delayed and cancelled flights.  In at least one location with a similar local paid sick leave law, the effects were so onerous they led a member airline to close a base of operations for flight attendants.  Forcing airlines to comply with the Paid Sick Leave Act for flight crew will cause additional operational disruptions, including cascading delays and cancellations across entire fleets.

6.      The Act also violates the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution because it purports to apply extraterritorially, that is, to work performed outside the state of Washington.

7.      As detailed below, Airlines for America, on behalf of its member airlines, seeks declaratory and injunctive relief to invalidate Washington's new Paid Sick Leave Act and to prohibit its enforcement with respect to airlines' employment of flight crew, such as pilots and flight attendants.

## II.      NATURE OF ACTION

8.      Plaintiff A4A seeks a declaration, pursuant to 42 U.S.C § 1983 and 28 U.S.C. §§ 2201 and 2202, that the Paid Sick Leave Act violates the Commerce Clause of the United

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

States Constitution because it substantially impairs interstate commerce when a national, uniform system of regulation is required.

9.      A4A seeks a declaration, pursuant to 42 U.S.C § 1983 and 28 U.S.C. §§ 2201 and 2202, that the ADA preempts the Paid Sick Leave Act.

10.      A4A seeks a declaration, pursuant to 42 U.S.C § 1983 and 28 U.S.C. §§ 2201 and 2202, that the Paid Sick Leave Act violates the Fourteenth Amendment to the U.S. Constitution because it purports to apply state law extraterritorially.

11.      A4A also seeks a preliminary injunction prohibiting enforcement of the Paid Sick Leave Act against airlines with respect to their employment of flight crew, pending final resolution of this challenge, and a permanent injunction prohibiting such enforcement of the Paid Sick Leave Act.

## III.    PARTIES

12.      A4A is a nonprofit corporation organized under the laws of the District of Columbia, with its principal place of business in Washington, D.C.  A4A advocates for its member air carriers on issues of safety, security, customer service, environment, energy, taxes, economic growth, and other policies and measures relevant to the airline industry.  A4A also works with its members in legal, political, and regulatory arenas to foster a business and regulatory environment that promotes a safe, secure, and financially stable airline industry in the United States.

13.      A4A is the principal trade association representing scheduled airlines, including American Airlines, Inc.; Alaska Airlines, Inc.; Atlas Air, Inc.; Federal Express Corp.; Hawaiian Airlines; JetBlue Airways Corp.; Southwest Airlines Co.; United Airlines, Inc.; and United Parcel Service Co.  A4A's members and affiliated airlines account for more than 70% of the annual passenger and air cargo traffic on U.S. airlines and provide more than 450,000 full-time equivalent airline-industry jobs.

14.      A4A members operate at Washington's airports and absent relief from this court will be subjected to the Paid Sick Leave Act and its implementing regulations.

COMPLAINT FOR DECLARATORY RELIEF - 4
4842-6380-3995v.10 0017572-000396

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

15.     Defendant Department of Labor & Industries ("Department" or "L&I") is a Washington State agency charged with creating rules and regulations implementing the provisions of the Paid Sick Leave Act and with enforcing the Act.

16.     Defendant Joel Sacks is the current Director of the Department of Labor & Industries.  As Director he is charged with creating rules and regulations implementing the provisions of the Paid Sick Leave Act and with enforcing the Act.

## IV.     JURISDICTION AND VENUE

17.     This Court has jurisdiction over the subject matter of this suit pursuant to 28 U.S.C. §§ 1331 and 1337 because Plaintiff's claims arise under the United States Constitution—specifically Art. I, Sec. 8, Cl. 3 (the "Commerce Clause"); Art. VI, Cl. 2 (the "Supremacy Clause"), and Amend. XIV, Sec. 1 (the "Fourteenth Amendment")—and because it arises under the ADA, an Act of Congress regulating air commerce.

18.     The Federal Declaratory Judgment Act, as amended, 28 U.S.C. §§ 2201 and 2202, authorizes the declaratory and other relief sought herein.

19.     Plaintiff A4A has standing as an organization to bring claims for declaratory and injunctive relief.  "[A]n association has standing to sue in their own right when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit."  *Hunt v. Wash. State. Apple Advert Comm'n*, 432 U.S. 333, 343 (1977); *see also United Food & Commercial Workers Union Local 751 v. Brown Grp., Inc.*, 517 U.S. 544, 552-53 (1996).  A4A's members subject to the Paid Sick Leave Act are substantially and adversely affected by it.  These members would have standing in their own right to challenge the Act and its implementing regulations.  Plaintiff is an organization that exists to promote its members' business and commercial interests, which are subject to immediate and ongoing harm caused by the Act and its implementing regulations.  The relief A4A seeks—a judgment declaring the Act unconstitutional as applied to the flight crew of its member carriers and an injunction—does

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

not require an individualized determination necessitating the participation of the members in this lawsuit.  *See Associated Gen. Contractors of America v. Metro. Water Dist. of Southern Calif.*, 159 F.3d 1178, 1181 (9th Cir. 1998) (associational standing appropriate because "declaratory and injunctive relief is sought rather than monetary damages"); *Schweiker v. Gray Panthers*, 453 U.S. 34, 40 n.8 (1981) ("The District Court correctly found that respondent had standing to sue because respondent alleged and proved that some of its members are persons adversely affected by the Secretary's regulations," which the suit sought to enjoin).

20.     Venue is proper in this Court under 28 U.S.C. § 1391(b) as this Court is located in the judicial district where a substantial part of the events or omissions giving rise to A4A's claims have occurred, are now occurring, and will occur in the future, and because Defendants reside or are found in this judicial district.

## V.      THE AIRLINE INDUSTRY

21.     All of A4A's members are federally regulated air carriers that operate domestic and international flights daily out of SeaTac International Airport ("SeaTac"), among other airports in Washington, and up and down the east coast, west coast, throughout the United States, and internationally.

22.     Pilots and flight attendants are highly mobile workers who do not work regularly scheduled shifts.  Schedules vary widely and are determined by bidding processes that take into account crew member preferences and seniority, FAA mandated flight duty limitations, collective bargaining agreement limitations, and crew member "domiciles" or "base" airports. (Typically, flight crew bid for available flight segments that begin and end at their domicile airports.)  Alaska Airlines, Inc., domiciles pilots and flight attendants at SeaTac International Airport.  A4A's remaining members operate several flights into and out of Washington airports on a regular, even daily, basis.

23.     A4A's members do not require pilots to reside in the same city or state as the domicile airport.  Many pilots reside in cities and states geographically distant from their domicile airport and commute to and from work by air travel.

COMPLAINT FOR DECLARATORY RELIEF - 6
4842-6380-3995v.10 0017572-000396

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

24.     Because A4A's members have few flights that both begin and end in Washington, pilots domiciled in Washington begin or end flights in Washington but spend minimal time actually working in Washington.

25.     As with pilots, A4A's members do not require flight attendants to reside in the same city or state as their domicile airport.  And because flight attendants can trade, add, and drop flights (without employer control or even advance notice), they do not work a regularly scheduled shift flying between the same airports or with standard start and end times for their shifts.  Instead, they work fluctuating schedules that depend on seniority, bidding preferences and choices, regulatory requirements, collective bargaining limitations, and base assignments.

26.     As with pilots, flight attendants, even those who start or end a flight in Washington, spend the bulk of their work time in flight, working in federally regulated airspace.  Flight attendants also pass through airports in multiple cities in the course of a single day, spending just enough time on the ground in each airport to prepare for the next flight.

27.     A4A's members calculate flight crew pay according to several different methods, many of which are not based on hours worked.

28.     For example, United Airlines pays pilots according to a complex formula that includes flight advances (which reflects the pilot's anticipated compensation at the end of the bid period), a Minimum Pay Guarantee (a minimum amount of pay for each day the pilot is scheduled to work), and, for lineholder pilots, a Protected Time Credit (which protects a pilot's compensation expectation when a schedule change adversely affects pay).  None of these factors are based on—nor do they correspond to—the number of hours a pilot actually works.

29.     Likewise, Alaska compensates flight attendants based on "trips for pay" or "TFP."  TFP is based on the distance of a flight, not on days or hours worked.  Flight attendant pay also fluctuates monthly according to several variables, including the number of duty periods in a sequence in a bid month, whether a flight attendant voluntarily swaps trips, the position in the aircraft the flight attendant works (which can change from flight to flight, at the

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

flight attendant's control), whether the flight attendant is deadheading,[2] whether flights are flown internationally, whether flights are delayed or cancelled, whether the flight attendant duty day exceeds a specified period of time, and whether the flight attendant has worked flight segments in addition to the bid schedule.

30. Other A4A members likewise have complex pay schemes for pilots and flight attendants that are not based on hours worked. For example, the unit of compensation for Southwest flight attendants is also TFP, which per the operative CBA is "based on point-to-point mileage," not on hours. Flights with nonstop mileage of two-hundred forty-three (243) miles or less are considered "standard" TFPs, and flights with nonstop mileage of more than two-hundred forty-three (243) miles are considered "non-standard" TFPs paid at a higher rate. Southwest flight attendants are also entitled to additional pay due to a delay—such as if a flight is grounded and does not take off on time or if a flight operates in excess of the scheduled block time—in such cases, they are paid a fraction of a TFP, not a particular rate per length of delay.

31. A4A members allow flight crew to accrue generous paid sick leave benefits. For instance, Alaska pilots accrue five and one-half hours of sick leave credit for each month the pilot performs six or more hours of work and can accrue up to 1000 hours in their sick leave banks. Pilots are also entitled to rapid re-accrual (11 hours per month) in cases of long-term absences of 60 days or more. Paid sick leave can be used for a pilot's own illness or for an eligible family member's illness. Alaska can require proof of sickness, at its expense, without regard to the number of days the pilot is sick or absent from work. Pilots who call out sick before reporting for duty can call in well and rejoin the original pairing, but only if the trip returns to the pilot's domicile before completion of all scheduled flight segments and a reserve pilot is not reassigned prior to departure. Pilots can also make up lost sick leave by opting to fly additional flights in the bid period.

---

[2] Deadheading is company-required travel to put a crewmember in a different location.

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

32.     Many A4A members have memorialized methods for calculating pay and accrued sick leave or other paid time off in collective bargaining agreements (CBA) extensively negotiated with pilot and flight attendant unions.  Some A4A members have had CBAs in place with pilot and flight attendant unions for decades.

33.     A4A members also maintain attendance and reliability policies for flight crew, many of which are also incorporated into CBAs.  The purpose of these policies is to allow airlines to monitor whether a crew member works when scheduled, to ensure on-time operations, and to make sure A4A members are able to staff their flights properly.  These policies consider the airline's need to comply with comprehensive federal safety laws and regulations on work hours and staffing, including those related to duty period limitations, flight crew family medical leave, rest requirements, and aviation safety.  They also take into account the airline's need to provide consistent, on-time service to its customers and to treat a highly mobile work force fairly and consistently throughout its entire operation, regardless of which airports any given flight crew flies into and out of on any given day.

34.     Because absences cause significant operational disruptions, A4A members often assess points for crew member absences and impose discipline when a crew member accrues too many points under the relevant attendance and reliability policy.  Potential discipline ranges from coaching to a written warning to possible termination.

## VI.     THE WASHINGTON PAID SICK LEAVE ACT

35.     Washington voters adopted Initiative 1433 – the Paid Sick Leave Act – in November 2016.  In addition to establishing a statewide minimum wage, it requires every employer to provide dedicated paid sick leave to every employee.  The paid sick leave provisions went into effect January 1, 2018.

36.     The Act defines "employee" broadly as "any individual employed by an employer."  RCW 49.46.010(3)(g).  And "employer" under the Act is "any individual, partnership, association, corporation, business trust, or any person or group of persons acting directly or indirectly in the interest of an employer in relation to an employee."  RCW

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

49.46.010(4).  Thus, airlines and flight crew would be covered by the Act, if the Act is not enjoined.

37.     The Act requires employers to provide employees one hour of dedicated paid sick leave for every 40 hours worked.  RCW 49.46.210(1)(a).  Employees must be allowed to begin using paid sick leave 90 days after their employment commences.  WAC 296-120-630(2)-(3).

38.     Covered employees are entitled to carry over 40 hours of unused paid sick leave every year, with no limit on how many days of accrued paid leave can be used in a single year.  RCW 49.46.210(1)(j).

39.     Under implementing regulations, employers may not require employees to take leave in increments exceeding one hour unless the employer applies for and receives a waiver from this increment limitation.  WAC 296-128-630(4).

40.     The Act requires that for each hour of paid sick leave used the employee be paid the greater of the state minimum hourly wage rate or the employee's "normal hourly compensation."  RCW 49.46.210(1)(i).  "An employer must calculate an employee's normal hourly compensation using a reasonable calculation based on the hourly rate that an employee would have earned for the time during which the employee used paid sick leave."  WAC 296-128-670(2).  The implementing regulations provide "[e]xamples" of what constitutes a "reasonable" formula.  For instance:

(c) For a nonexempt employee paid a salary, dividing the annual salary by fifty-two to determine the weekly salary, and then dividing the weekly salary by the employee's normal scheduled hours of work;

(d) For employees whose hourly rate of pay fluctuates:

(i) Where the employer can identify the hourly rates of pay for which the employee was scheduled to work, a calculation equal to the scheduled hourly rates of pay the employee would have earned during the period in which paid sick leave is used;

(ii) Where the employer cannot identify the hourly rates of pay for which the employee would have earned if the employee worked, a calculation based on

the employee's average hourly rate of pay in the current or preceding thirty days, whichever yields the higher hourly rate.

WAC 296-128-670(2).

41.     Under the Act, employees are entitled to receive sick pay no later than the payday for the pay period in which the paid sick leave was used by the employee unless verification of absences exceeding three days is required.  WAC 296-128-680.   The Act prohibits employers from requesting physician verification, unless the employee misses more than three consecutive work days.  WAC 296-128-660.

42.     The Act prohibits employers from counting sick-leave-related absences towards discipline.  RCW 49.46.210 (2)(4); WAC 296-128-770.

43.     The Act requires employers to provide regular notifications to employees about the amount of paid leave available to the employee.  RCW 49.46.210(1)(i).  Implementing regulations clarify that "regular notification" means an (1) accounting of paid sick leave accruals each month, along with any unused paid leave available for use by an employee; (2) paid sick leave reductions each month, including paid sick leave used by an employee and accrued paid sick leave not carried over to the following year. WAC 296-128-760.

44.     The Act contains no exemption for flight crew or for workers covered by CBAs. WAC 296-128-700.

45.     In addition to agency enforcement proceedings, *see* WAC 296-128-780 to 810, the Act also creates a private right of action for both failure to provide the mandated benefits and for retaliation.  RCW 49.46.800; WAC 296-128-780(10).  One national union representing many A4A members' flight attendants has already insisted that an A4A member air carrier comply with the Act.

## VII.    ADMINISTRATIVE RULEMAKING

46.     The Department of Labor and Industries, responsible for adopting and implementing rules to carry out and enforce the Act, commenced administrative rulemaking in January 2017.

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

47.     Public comments submitted to the Department identified several problems with the statute.  Key among them was the difficulty in applying the Act to employees, like flight crew, who spend only a small percentage of their workday within Washington's jurisdiction.  Other comments identified additional difficulties in applying the Act to employees covered by negotiated paid time off provisions that allow for the use of sick days.

48.     To resolve these issues, comments recommended that employees of an RLA-covered air carrier be exempted from the Act's definition of "employee" in the same way that the Act already excludes railroad employees.  *See* RCW 49.46.010(3)(g).  Comments also recommended exemptions for individuals covered by a CBA that provides for paid sick leave or a paid time off policy that permits the use of sick days.  Comments noted that several state and federal laws currently exempt employees of RLA-covered air carriers and, alternatively, employees covered by valid CBAs from other leave laws and urged the Department to look to these regimes for guidance.

49.     The Department rejected each of these recommendations and promulgated final rules with no exemptions for flight crew, employees of RLA-covered air carriers, or employees covered by valid CBAs with pre-existing paid sick leave or paid time off policies that allow for the use of sick days.

50.     The Department has subsequently informed one of A4A's members that:

      a.   The Act applies at least to all flight crew domiciled in Washington, including when those employees are working outside the state.

      b.   L&I will consider all hours on duty without regard to the airlines' method of calculating time worked towards statutory accrual, usage, and other requirements under the Act, even if the employee was working outside Washington and in a jurisdiction that purports to apply its own paid sick leave law with different rights and obligations to the same employee.

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

c.  The Act's protections apply, and would prohibit any disciplinary action for use of sick leave, even if the flight crew uses paid sick leave in a location other than Washington.

d.  Absent an employee waiver or variation approved by L&I, L&I will require air carriers to allow flight crew to use sick leave in increments of one duty hour or less, even though airlines cannot guarantee that a crew member who calls out for only a short time before calling in well again will be able to pick up another flight.

e.  Air carriers are prohibited by the Act from requesting medical verification of the need for sick leave unless the individual calls out sick on more than three consecutive work days.  Under the state's interpretation, an individual scheduled to fly a pairing on Friday, Saturday, and Sunday and another pairing on Monday and Tuesday can call out sick on Friday and, as a consequence of how flight crew are scheduled, miss work on Saturday and Sunday and call out sick again on Monday, without triggering an employer's right to request medical verification.

## VIII.   THE ACT WILL CAUSE IMMEDIATE AND SUBSTANTIAL HARM

51.   The Paid Sick Leave Act and its implementing regulations immediately and substantially harm A4A's member airlines.  By way of example and without limitation:

52.   The Act imposes an hourly sick leave accrual rate whereas A4A member flight crew accrue leave according to terms that are not readily converted to hours worked as specified in employer policies and CBAs.  The Act also imposes compensation formulas based on hourly rates of pay when flight crew are not paid according to hours worked, and the pay a crew member receives can fluctuate significantly month to month.

53.   The Act interferes with an airline's enforcement of nationwide attendance and reliability policies, which were designed to comply with comprehensive federal laws and regulations related to duty period limitations, flight crew family medical leave, rest

COMPLAINT FOR DECLARATORY RELIEF - 13
4842-6380-3995v.10 0017572-000396

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

requirements, and aviation safety.  For instance, the Act's three-day minimum absence

requirement impairs airlines from requesting medical verification.  Because of the way flight

crew schedules are built, flight crew will rarely (if ever) trigger the requirement for a call out

on more than three back-to-back work days.

54.     In addition to significantly impairing the airline's ability to investigate fraud and

abuse of sick leave protections, compliance with the Act will also lead to more absences, which

will lead to more delays and flight cancellations, interfering with interstate travel, adversely

affecting customer experience, and doing lasting damage to air carriers' brands and otherwise

burdening interstate commerce.  Regular and predictable employee attendance is vital to

ensuring passenger safety, FAA compliance, and timely flight departures.  FAA regulations set

the minimum staffing levels for every commercial flight.  Without the requisite number of crew

members on board, a plane cannot take off.  If a scheduled crew member unexpectedly calls out

sick, a replacement crew member must be found through a process that often causes a delay in

the flight's departure.  If a replacement crew member cannot be found either because of

scheduling or because no reserve crew members are at the necessary location, the flight may be

cancelled in its entirety.  And because flight crew schedules are built with a complex array of

connections and transfers, a delayed departure due to an unexpected absence in one location

can ripple across the system, leading to additional delays and possibly cancellations at other

airports across the country.  Indeed, one A4A member airline recently closed a flight attendant

base because compliance with that local jurisdiction's paid sick leave law led to a rapid

increase in the number of sick calls, which caused disruptions to the operation.

55.     A4A members will also be required to increase the reserve pool headcount for

flight crew to ensure operational continuity.  Hiring more flight crew will increase the costs of

operation without resolving the core problem of having to comply with disparate regimes.

56.     The Act will further expose A4A member airlines to a patchwork of inconsistent

state and municipal regulatory regimes, adversely affecting efficient, on-time air transportation.

Several of the airports to which A4A members fly are in jurisdictions with their own paid sick

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

leave regimes.  At least six other states have mandatory paid sick leave laws – Arizona, California, Connecticut, Massachusetts, Oregon, and Vermont – and there are more than 30 sick leave regimes at the municipal level.

57.     These sick leave regimes impose different (and inconsistent) obligations on employers and grant employees different rights with respect to paid leave.  For example, these regimes authorize different uses for sick leave, different accrual and annual carryover limits, different compensation rate formulas, different employee notification requirements, and different restrictions on when employers can request medical verification of an illness.  Complying with the laws of each state or municipality in which a carrier operates (and over which it flies) means tracking each crew member's hours worked and the locations in which they worked and then calculating different accrued sick leave benefits to each employee.  Often times this tracking is different from how duty time is tracked for pay purposes, meaning a carrier would have to have multiple systems for tracking separate administrative requirements.  Not only are the administrative costs of complying onerous and unreasonable, but attempts to comply with these different regimes simultaneously will cause mass confusion and expose A4A member airlines to a flood of new lawsuits and enforcement proceedings.

# IX.     CLAIMS

## COUNT I:

## THE PAID SICK LEAVE ACT VIOLATES THE COMMERCE CLAUSE OF THE U.S. CONSTITUTION

58.     Plaintiff realleges and incorporates herein each of the preceding allegations.

59.     Art.1, Sec. 8, Cl. 3 of the United States Constitution empowers Congress—and not states or municipalities—to "regulate Commerce with foreign Nations, and among the several States."  Accordingly, this clause limits the powers of state and local governments to enact laws affecting foreign and interstate commerce when a national, uniform economic policy is required.

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

60.     The United States Government has exclusive sovereignty of the airspace of the United States.  Federal control of air travel is intensive and exclusive.  Uniformity in regulation of air transportation is a national necessity to ensure efficient air carrier operations.

61.     A4A member airlines engage in interstate commerce as a federally regulated air carrier.

62.     The Paid Sick Leave Act and similar laws enacted in other states and municipalities in which A4A member airlines operate impose impermissible burdens on air transportation and interstate commerce.

63.     The evolving patchwork of new state regulation of sick leave exposes A4A member airlines to inconsistent and potentially conflicting state and local regulation. Compliance with every state or local paid sick leave law imposed by jurisdictions in which A4A member airlines operate is nearly impossible, and even if it were possible, it would be extremely burdensome.

64.     The burdens imposed by the Paid Sick Leave Act are also excessive in relation to its putative local benefits, particularly given A4A's member airlines already provide paid sick leave (including in collective bargaining agreements) to their flight crew.

65.     Because the Act impermissibly burdens interstate commerce, the Paid Sick Leave Act violates the Commerce Clause of the United States Constitution.

## COUNT II:

## THE AIRLINE DEREGULATION ACT PREEMPTS THE PAID SICK LEAVE ACT

66.     Plaintiff realleges and incorporates herein each of the preceding allegations.

67.     The Supremacy Clause, Article VI, clause 2 of the United States Constitution states, "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof . . . shall be the Supreme Law of the land."

68.     Under the Supremacy Clause, federal law preempts any state or local regulation in an area in which Congress has expressly or impliedly exercised exclusive authority.

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

69.     Congress enacted the ADA to deregulate the airline industry; to ensure maximum reliance on competitive market forces; to encourage efficiency, innovation, and lower prices; and to meet the needs of consumers and the commerce of the United States.  To prevent states from undoing federal deregulation of air transportation on their own, Congress enacted an express preemption provision.  Under the ADA, state and local governments are expressly prohibited from enacting or enforcing "a law, regulation or other provision having the force and effect of law related to a price, route, or service of an air carrier …"  49 U.S.C. § 41713(b).

70.     The Paid Sick Leave Act relates to, and significantly affects, A4A member airlines' "prices, routes, or services," interfering with Congress's intent in enacting the ADA.

71.     By way of example and without limitation, the Act impedes A4A member airlines' abilities to enforce attendance and reliability policies designed to ensure safe, on-time, and efficient operations.  As a result, the Act will lead to delays, cancelled departures and, in some cases, closed bases of operations.  In these and other ways, the Act relates to the prices, routes, and services of air carriers.

72.     Because the Paid Sick Leave Act impermissibly regulates and relates to airlines "prices, routes, or services," the ADA preempts the Paid Sick Leave Act which is, thus, unconstitutional.

## COUNT III:

### THE PAID SICK LEAVE ACT VIOLATES THE PROHIBITION AGAINST EXTRATERRITORIALITY IMPLICIT IN THE FOURTEENTH AMENDMENT

73.     Plaintiff realleges and incorporates herein each of the preceding allegations.

74.     The Fourteenth Amendment to the United States Constitution provides, "No state shall make or enforce any law which shall abridge the privileges or immunities of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law[.]"

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

75.     Pursuant to this provision, states lack the power to exercise extraterritorial jurisdiction to regulate or control activities beyond their boundaries.

76.     The Paid Sick Leave Act purports to regulate activity outside Washington and the terms and conditions of work of employees who do not live in Washington, are not based in Washington, and who work only fleetingly in Washington.  Because the bulk of the work done by A4A member airlines' flight crews is wholly or mostly outside of Washington's borders, the Act constitutes an extraterritorial application of Washington law in violation of the Fourteenth Amendment.

## X.     PRAYER FOR RELIEF

77.     WHEREFORE, Plaintiff asks for the following relief:

a.  Judgment against Defendants declaring that the Paid Sick Leave Act and its implementing regulations, as applied to flight crew:

   i.  Violate the Commerce Clause of the United States Constitution;

   ii.  Are preempted by the Airline Deregulation Act; and

   iii.  Are unconstitutional as applied to A4A member airlines because they constitute impermissible extraterritorial application of state law;

78.     Preliminary and permanent injunctive relief prohibiting enforcement of the Act against A4A member airlines.

79.     An award to A4A for its attorneys' fees and costs incurred in this action under 42 U.S.C. § 1988, and any other applicable law.

80.     Any other relief the Court may deem just and appropriate.

COMPLAINT FOR DECLARATORY RELIEF - 18
4842-6380-3995v.10 0017572-000396

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

1    DATED this 6th day of February, 2018.

2                                                    Attorneys for Airlines for America

3
                                                     By /s/ John Hodges-Howell
4                                                        Harry J. F. Korrell
                                                         WSBA # 23173
5                                                        John Hodges-Howell
                                                         WSBA # 42151
6                                                        Davis Wright Tremaine
                                                         1201 Third Avenue, Suite 2200
7                                                        Seattle, WA  98101-3045
                                                         Telephone: (206) 622-3150
8                                                        E-mail: HarryKorrell@dwt.com
                                                                 jhodgeshowell@dwt.com
9

10
                                                     By /s/ Robert A. Siegel
11                                                      Robert A. Siegel
                                                        # 64604 (CA)
12                                                      O'Melveny& Myers LLP
                                                        400 South Hope Street, 18th Floor
13                                                      Los Angeles, CA 90071
                                                        Telephone: (213) 430-6005
14                                                      E-mail: rsiegel@omm.com

15                                                      Chris A. Hollinger
                                                        # 147637 (CA)
16                                                      Adam P. KohSweeney
                                                        # 229983 (CA)
17                                                      O'Melveny & Myers LLP
                                                        2 Embarcadero Center
18                                                      28th Floor
                                                        San Francisco, CA 94111
19                                                      Telephone: (415) 984-8700
                                                        E-mail: chollinger@omm.com
20                                                              akohsweeney@omm.com

21                                                   (*Pro hac vice* pending)

22

23

24

25

26

27

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax